UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

D'ANGELO O. KEY,

              Plaintiff,

v.                                                    Case No. 20-cv-751-pp

GABRIEL JOHNSTON, CHANCE CASTEL,
MATTHEW SCULLION, ANDREA SCHNEIDER-MAIER,
TRACY MARTIN, RYAN MEYERS, JUSTIN RIBAULT,
TRICIA LORENZ, STACEY HOEM, MICHAEL KEMERLING,
BECKY KRAMER, ERIN WEHRLE and KOLTON MCCORKLE,

              Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      D'Angelo O. Key, an inmate at the Wisconsin Secure Program Facility who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On May 27, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $3.51. Dkt. No. 7. The court received that fee on June 15, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

2

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff explains that on January 20, 2020, while in segregation, he drank a large amount of ammonium lactate lotion. Dkt. No. 1 at 2. The plaintiff asserts that the lotion was medicated and was not prescribed to him. Id. He says he drank the lotion in the presence of an unnamed officer (who is not a defendant), who alerted the proper authorities about the situation. Id.

The plaintiff recounts that he was taken to the Health Services Unit, where defendant registered nurse Michael Kemerling informed him that defendant Dr. Justin Ribault told Kermiling to put the plaintiff in observation

3

and not provide treatment. Id. The plaintiff asserts that defendant Matthew Scullion approved placing the plaintiff on clinical observation with a hygiene restriction. Id.

The plaintiff explains that during the next couple of days, defendant correctional officer Gabriel Johnston disregarded the hygiene restriction by ignoring the sign posted on the plaintiff's cell door and giving him a sixteen-ounce bottle of Axe bodywash, and deliberately never coming back to secure it. Id. A little less than a week later, on January 28, 2020, the plaintiff asserts that he informed defendant correctional officer Chance Castel that he was suicidal. Id. at 3. The plaintiff alleges that he showed Castel the bodywash and said, "I don't suppose to have this." Id. The plaintiff asserts that, despite the sign on his door and his verbal warnings, Castel walked away. Id.

The plaintiff alleges that after Castel walked away, he began to drink the bodywash. Id. According to the plaintiff, correctional officer Hoile (who is not a defendant) noticed him drinking the bodywash and asked him why he was doing that. Id. When the plaintiff allegedly replied that he wanted to kill himself, Hoile immediately informed the sergeant that the plaintiff was engaging in self harm. Id.

The plaintiff asserts that seconds later, Hoile and multiple officers rushed to his cell, and that he continued to drink the body wash in front of those officers. Id. The plaintiff explains that the officers eventually persuaded him to give them the bottle, which was nearly empty. Id. The plaintiff alleges that he drank half a bottle, or about eight ounces. Id. The plaintiff indicates

4

that a supervisor approached his cell, and that Hoile told the supervisor that the plaintiff's stomach was "doing numbers" and "really jumping" after drinking the body wash. Id. The plaintiff says he was placed in restraints and removed from the cell. Id.

The plaintiff asserts that he was then taken to a strip cell, where correctional officer Oswald (who is not a defendant) saw the plaintiff remove pills from his underwear and put them in his mouth. Id. at 3-4. Oswald allegedly took out his OC spray, shook it and ordered the plaintiff to spit out the pills, but the plaintiff told Oswald he had already swallowed them. Id. at 4. The plaintiff states that he then was strip-searched and taken to the HSU. Id. The plaintiff asserts that someone (the court assumes the officers) informed defendant nurse Becky Kramer that the plaintiff had swallowed bodywash and an unknown amount of unknown pills. Id. According to the plaintiff, Kramer asserted that she called the on-call doctor who told her not to send the plaintiff to the local hospital. Id. The plaintiff explains that he did not receive treatment but was placed in an observation cell and told to drink plenty of water. Id.

The plaintiff explains that the next day (January 29, 2020), after he complained of stomach pains, defendant Dr. Tricia Lorenz diagnosed him with acute gastritis and prescribed omeprazole; the plaintiff says he was seen because he'd reported worsening abdominal pain after drinking the body wash. Id. The plaintiff reports being seen three times the next day because of his extreme stomach pain, chest pain and constant vomiting blood. Id. The plaintiff explains that defendant nurse Erin Wehrle saw the blood in his vomit but did

not send him to the hospital. Id. The plaintiff explains that Wehrle gave him a laxative to help with his bowel movements. Id. The plaintiff says that between January 28 and January 30, 2020, he experienced "repeated vomiting with blood," severe abdominal pain, discomfort eating and irregular bowel movements. Id.

The plaintiff says that on February 1, 2020, defendant correctional officer Andrea Schneider-Maier came to his cell, and that he immediately informed her that he was suicidal. Id. at 4-5. The plaintiff asserts that Schneider-Maier went to his property bin and tried to give him a stick of Secret deodorant. Id. at 5. The plaintiff states that he repeated that he was suicidal and told her he was on a hygiene restriction. Id. The plaintiff says she disregarded the notice on his door, gave him the deodorant anyway and deliberately didn't come back to retrieve it. Id.

The plaintiff asserts that correctional officer Kolton McCorkle then came to his cell. Id. The plaintiff alleges he told McCorkle that he was suicidal and showed him the deodorant. Id. The plaintiff claims that McCorkle told him it was only 1.7 ounces and walked away, disregarding the sign on the plaintiff's door and the plaintiff's warning. Id. The plaintiff asserts that he ate the entire stick of deodorant. Id. After the plaintiff ate the deodorant "in the presence of correctional officers," he was taken to HSU, where again, nurse Kemerling did not give him any treatment. Id. The plaintiff explains that he vomited (with blood) several times a day after eating the deodorant. Id. He asserts that he

6

Case 2:20-cv-00751-PP-WED   Filed 08/17/20   Page 6 of 14   Document 9

submitted several health services slips, but he did not receive any treatment. Id. at 5-6.

The day after the plaintiff ate the deodorant (February 2, 2020), Dr. Stacey Hoem (who is not a defendant) of the psychological services unit allegedly assessed the plaintiff at his observation cell and approved him to have a bar of soap. Id. at 6. The plaintiff claims that Dr. Hoem know that he had previously been on clinical observation for misusing hygiene and that she knew he was on a hygiene restriction. Id. The plaintiff explains that the next day, he informed defendant correctional officer Tracy Martin as Martin was walking by his cell that he had become increasingly suicidal because he was being kept on observation "unjustifiably." Id. The plaintiff says he told Martin several times that, if Martin did not take the soap away, he would eat it. Id. Martin allegedly responded, "[G]o ahead and do it, soap aint gonna hurt you." Id. He says that Martin made no effort to take the bar of soap. Id. The plaintiff asserts that, shortly thereafter, defendant correctional officer Ryan Meyers walked past the plaintiff's cell. Id. The plaintiff asserts that he pleaded with Meyers to take soap away, but that Meyers responded, "You would have to start eating it before I could do anything about it." Id. The plaintiff alleges that Meyers walked away after watching the plaintiff eat a substantial amount of soap. Id. at 7.

The plaintiff asserts that after he ate the bar of soap, he pressed his emergency call button and informed sergeant Ward (who is not a defendant) that he was lightheaded, dizzy and had tightness in his throat. Id. Ward responded that he would call the HSU. Id. The plaintiff asserts that a few

7

minutes later Ward informed the plaintiff that HSU advised him to drink plenty of water. Id. The plaintiff asserts that, minutes later, he passed out and hit his head on the door. Id.

According to the plaintiff, correctional staff tried to get him to respond, but he was unresponsive. Id. The plaintiff explains that an announcement was made, asking all available medical first responders to report to his unit. Id. The plaintiff asserts that defendant supervisor Matthew Scullion approached his door and tried to get him to respond, but he was still unresponsive. Id. The plaintiff alleges that officers could see him on camera and through a large window in his observation cell. Id.

The plaintiff asserts that while he was unresponsive, Scullion sprayed him with incapacitating chemical agents; the plaintiff asserts that this constituted excessive force. Id. at 8. The plaintiff says that he woke up "engulfed in incapacitating agents" and complied with being restrained. Id. He also asserts that "[u]pon opening of the observation door [the plaintiff] was visibly stark naked!" Id. The plaintiff alleges staff bent him over while they placed him in restraints, and then they walked him down the range naked in full view of other inmates. Id. The plaintiff states staff gave him a staff-assisted shower and then took him to the HSU. Id. The plaintiff asserts he received no medical treatment. Id. The plaintiff states that, since then, he has been treated extensively for a medical diagnosis he received following these events. Id.

For relief, the plaintiff seeks compensatory damages of $100,000 and punitive damages of $200,000. Id. at 12.

C. <u>Analysis</u>

The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." <u>Phillips v. Diedrick</u>, 18-C-56, 2019 WL 318403 at *2 (E.D. Wis. Jan. 24, 2019) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)). A plaintiff must show that the defendants "knowingly and unreasonably failed to respond to an objectively serious risk of harm." <u>Conner v. Rubin-Asch</u>, 793 Fed. App'x 427, 430 (7th Cir. 2019) (citing <u>Farmer</u>, 511 U.S. at 844-845; <u>Wilson v. Adams</u>, 901 F.3d 816, 820 (7th Cir. 2018)).

> When the serious risk at issue is attempted suicide, a defendant acts knowingly and unreasonably if that defendant "(1) subjectively knew the prisoner was at risk of committing suicide and (2) intentionally disregarded that risk." *Lisle v. Welborn*, 933 F.3d 705, 716-17 (7th Cir. 2019) (quoting *Collins v. Seaman*, 462 F.3d 757, 761 (7th Cir. 2006)). This requires "more than mere or gross negligence, but less than purposeful infliction of harm." *Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003).

<u>Id.</u>

The court will allow the plaintiff to proceed against defendants Castel, Schneider-Maier, McCorkle, Martin and Meyers on claims that they were deliberately indifferent to the serious risk he posed to himself. The plaintiff alleges that he notified these defendants that he was suicidal and/or that he intended to eat hygiene items. The court acknowledges that the plaintiff may be unable to prove that these officers "knew of a significant likelihood that he would imminently" harm himself or that consuming hygiene items in the amounts the plaintiff describes presented an objectively, sufficiently serious

9

risk of serious damage. At the pleading stage, however, where the court is obligated to construe the plaintiff's complaint liberally, the court finds his allegations are sufficient to state a claim against these officers.

The plaintiff has not stated a claim against Officer Johnston. The plaintiff does not allege that he informed Johnston that he was suicidal or that he intended to drink the bodywash, so the court cannot reasonably infer that Johnston knew there was a "significant likelihood that [the plaintiff] would imminently" harm himself by consuming the bodywash. The plaintiff says that he possessed the bodywash Johnston gave him for nearly a week without incident. Johnston may have been negligent in disregarding the no-hygiene notice on the plaintiff's door, but negligence alone does not give rise to a constitutional violation. Worlds v. Spiegla, 277 F. App'x 625, 627 (7th Cir. 2009) ("Negligent conduct on the part of a state official is insufficient to make out a constitutional violation.")

Nor has the plaintiff stated a claim for deliberate indifference against nurses Kemerling, Kramer and Wherle and doctors Ribault and Lorenz based on his allegations that they did not transport him to the local hospital or provide him any treatment after he consumed various hygiene products. After the plaintiff drank the lotion, Ribault told Kemerling to put the plaintiff on observation; the plaintiff was placed on observation and put on the hygiene restriction. When the plaintiff's symptoms progressed to vomiting and stomach pains, he was seen multiple times (it's not entirely clear which health official

10

examined him), Lorenz gave him omeprazole[1] and nurse Wherle gave him a laxative to help with his bowel movements. By the plaintiff's own allegations, these defendants were not deliberately indifferent to the plaintiff's medical needs—they *responded* to his medical needs. The plaintiff believes they should have done more, such as transporting him to the hospital, but "neither medical malpractice nor a mere disagreement with a [medical professional's] medical judgment amounts to deliberate indifference." Sierra-Lopez v. Pagels, No. 20-cv-305, 2020 WL 4569222, at *3 (E.D. Wis. Aug. 7, 2020) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). See also Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003); Chadwick v. Walker, 365 F. App'x 687, 690 (7th Cir. 2010).

The plaintiff fails to state a claim against Dr. Hoem for the same reason. The plaintiff asserts that she evaluated him while he was in observation and determined that it was safe to provide him with a bar of soap. Although that determination appears to have been incorrect, an error in judgment or even medical malpractice does not violate the Constitution. See Greeno, 414 F.3d at 653. ("[N]either medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference"). The facts the plaintiff alleges indicate that Hoem exercised her medical judgment after interacting with him in person. That is sufficient under the Constitution.

---

[1] Omeprazole treats stomach and esophagus problems by reducing the amount of stomach acid. https://www.webmd.com/drugs/2/drug-3766-2250/omeprazole-oral/omeprazole-delayed-release-tablet-oral/details.

11

Finally, the court will allow the plaintiff to proceed on an Eighth Amendment claim against defendant Scullion based on the plaintiff's allegations that Scullion sprayed him with an incapacitating agent while the plaintiff was unresponsive and then paraded him naked down the cell range in view of other inmates. Wilkins v. Gaddy, 559 U.S. 34, 39-40 (2010) (holding that an officer who applies force maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline violates the Constitution); Calhoun v. Detella, 319 F.3d 936, 939-40 (7th Cir. 2003) (holding that an officer who conducts a strip search in a manner designed to demean and humiliate a prisoner violates the Constitution).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Johnston, Kemerling, Kramer, Wehrle, Ribault, Lorenz and Hoem.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Castel, Scullion, Schneider-Maier, Martin, Meyers and McCorkle. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$346.49** balance of the filing fee

12

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 17th day of August, 2020.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**